## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| **DANIELLE TAYLOR,** | ) | |
| | ) | |
| *Appellant,* | ) | |
| | ) | |
| v. | ) | **Case No.  25-1246** |
| | ) | |
| **REVATURE LLC** | ) | |
| | ) | |
| *Appellee.* | ) | |
| | ) | |

## APPELLEE REVATURE LLC'S
## INFORMAL RESPONSE BRIEF

Pursuant to Local Rule 34(b), Appellee Revature LLC ("Revature")
submits this response to Appellant-Plaintiff Danielle Taylor's Informal
Opening Brief (ECF No. 8).  As explained below, the District Court's
decision to dismiss the Fourth Amended Complaint with prejudice should
be affirmed.

## PROCEDURAL HISTORY

1.   On October 13, 2022, *pro se* Plaintiff filed her initial
Complaint with the District Court asserting four claims under the
Americans with Disabilities Act (ADA): (1) discriminatory discharge;

1

(2) failure to accommodate; (3) retaliation; and (4) unequal terms and conditions.  (Dist. Ct. ECF No. 1.)

2.    On January 27, 2023, Revature moved to dismiss each of those claims.  (Dist. Ct. ECF No. 8.)

3.    On February 21, 2023, Plaintiff amended her Complaint under Rule 15(a)(1)(B) to add a Fifth Claim for a cause of action for "confidentiality" under 42 U.S.C. § 12112(d)(4)(c).  (Dist. Ct. ECF No. 16.) Plaintiff subsequently requested and was given permission to add a Sixth Count alleging interference under the ADA.  (Dist. Ct. ECF Nos. 20, 24.) Revature moved to dismiss those claims as well.  (Dist. Ct. ECF Nos. 18, 27.)

4.    On April 18, 2023, Plaintiff, without leave, filed an "amendment" purporting to add a Seventh Count alleging an alternative interference claim.  (Dist. Ct. ECF No. 30.)  Revature moved to strike the latter amendment because Plaintiff did not have the consent of Revature or leave from the Court.  (Dist. Ct. ECF No. 34.)

5.    On September 28, 2023, the District Court granted each of the motions to dismiss as to the first six claims, and struck the seventh claim,

but granted Plaintiff the right to seek leave to amend again ("Initial Dismissal Order"). (Dist. Ct. ECF No. 38.)

6.    On July 18, 2024, Plaintiff filed a Fourth Amended Complaint. (Dist. Ct. ECF No. 55.) The Fourth Amended Complaint asserted claims under the ADA for: (i) discriminatory discharge (Count 1); (ii) failure to accommodate (Count 2); (iii) hostile environment (Count 4); (iv) retaliation (Counts 3 and 5); and (v) interference (Counts 6 and 7). (Dist. Ct. ECF No. 55-2.)

7.    Revature again moved to dismiss each of the claims. (Dist. Ct. ECF No. 57.)

8.    On March 5, 2025, the District Court granted Revature's motion and dismissed each of Plaintiff's claims with prejudice (the "Final Dismissal Order"). (Dist. Ct. ECF No. 81.)

9.    Plaintiff timely noted her appeal of the Final Dismissal Order. (Dist. Ct. ECF No. 82.)

## ALLEGED FACTS

Revature is an Information Technology (IT) provider that staffs the IT needs of its corporate clients with qualified software programmers. (*See* Dist. Ct. ECF No. 81 at 2.) To ensure an adequate supply of qualified

3

labor, Revature offers a 10 to 12 week paid training period, after which Revature seeks to place the employee with one of its corporate clients. (*Id.*) When there is no client assignment readily available, the employee is placed in Revature's nonbillable status, referred to as the "Bench," where the employee remains in pay status but is paid at a lower rate. (*Id.*)

Plaintiff began work with Revature in July 2020. (Dist. Ct. ECF No. 55-1 at 1.) Following the completion of her training, Plaintiff was placed at one of Revature's customers on November 9, 2020. (*Id.* at 2.) Effective July 2021, Plaintiff was removed from that assignment at the client's request, and she was placed on the Bench while Revature sought other opportunities for her. (Dist. Ct. ECF No. 55-3 at 8 of 31.)

While on the Bench, Plaintiff was given the opportunity to: (i) interview for positions with other corporate clients, (ii) participate in multiple internal panel interviews, and (iii) was paid a minimum wage. (*Id.* at 9-11, 25 of 31.)

Shortly after being placed on the Bench, on July 30, 2021, Plaintiff sent an email to Revature's human resources department stating that she was "experiencing difficulty using vocal speech" and requested "text

4

to talk instead of vocal speech." (*Id.* at 13 of 31.)  Plaintiff did not specify to Revature the precise nature of the impairment purportedly limiting her speech at that time (or at any other time).

Revature repeatedly asked Plaintiff to obtain and produce a doctor's certification of her medical impairments in order to provide Revature with further information regarding her asserted medical condition and need for accommodation.  (*See, e.g., id.* at 13 of 31 ("On August 25, Jalisa wrote to me, basically saying let's skip the interactive discussion, here's some forms for a medical provider…").)

On September 7, 2021, Plaintiff had a conversation with "Sijuola," a Human Resources representative of Revature, in which Plaintiff was once again directed to obtain and produce a doctor's note for any accommodations that she was seeking.  (*Id.* at 15 of 31.)  The following day, Sijuola followed up with an email once again providing Plaintiff with the medical certification form that she needed to have completed by a doctor in order for the company to review and assess any accommodation requests.  (*Id.* at 15-16 of 31.)  Two weeks later, on or about September 22, 2021, Sijuola followed up with an email asking Plaintiff about the status of the ADA medical form.  (*Id.* at 17 of 31.)

On September 29, 2021, Sijuola sent Plaintiff an email with the subject of "RE Interactive Discussion – 2nd/Final Follow Up." (*Id*. at 20 of 31.) Although Plaintiff suggested she might be able to return the forms in person (*id*. at 21 of 31), she never confirmed that she had obtained the required ADA certification form from a medical professional. On October 1, 2021, Revature informed Plaintiff that it could not engage in any further discussion of potential accommodations unless and until the ADA certification forms were returned. (*Id*. ("October 1, Sijuola writes back, saying 'the conversation is over now but I'll be more than happy to resume when you are ready to share the forms'").)

Because Plaintiff never provided the requested forms, Revature considered the request for an accommodation to be withdrawn. (*See id*.) In addition to her failure to provide the ADA certification forms that Revature needed to understand and assess any accommodation requests, Plaintiff also failed to actively participate in required Bench activities. (*Id*. at 14 of 31.) On August 31, 2021, Plaintiff received a communication from Revature human resources in which she was instructed that she "must begin full participation in all Bench activities." (*Id*.) On September 8, 2021, Plaintiff received another email from Revature instructing her

6

to "please resume with participation in Bench activities." (*Id*. at 16 of 31.)  On September 17, 2021, Plaintiff received another email from Revature with the subject line: "Bench guidelines" reiterating the company's expectation that Plaintiff would participate in all required Bench activities, including following a schedule updated in Slack (an internal messaging app).  (*Id*. at 16-17 of 31.)  On or about September 23, 2021, Plaintiff received another email from Revature which stated:

> Good afternoon, Danielle.  After your discussion with HR on 9/7/21, you were instructed to resume Bench activities in full.  After over a week of continued nonparticipation, on 9/17/21 you were notified again by Antony of the expectations regarding Bench participation.  At this time you still not have not participated in any of the required activities for your time on the Bench.
>
> This is formal notice that you are to begin Bench activities participation in full no later than tomorrow or escalation will be initiated.

(*Id*. at 17-18 of 31.)

On November 1, 2021, Revature informed Plaintiff that it had a potential placement opportunity for her in Florida.  However, Plaintiff declined to participate in an interview for the opportunity on the grounds that the opportunity was being placed through a temp agency and was of indefinite length.  (*Id*. at 25-26 of 31.)  After Plaintiff declined to

7

interview for the Florida opportunity, Revature informed Plaintiff that it was moving ahead with ending the employment relationship and presenting Plaintiff with a Mutual Release document.  (*Id*. at 26 of 31.)

## ARGUMENT

**I.    The District Court's Dismissal of Plaintiff's Claims for Discriminatory Discharge, Failure to Accommodate and Hostile Work Environment Should be Affirmed.**

In the Final Dismissal Order, the trial court correctly dismissed Plaintiff's claims in Counts 1, 2, and 4, for discriminatory discharge, failure to accommodate, and hostile work environment under the ADA because she failed to adequately plead she was disabled under the statute.  That decision should be affirmed.

**A.    The District Court correctly found that Plaintiff failed to plead she was disabled under the statute.**

In order to state a claim for any non-retaliation claim under the ADA, a plaintiff must adequately plead that she is a qualified individual with a disability.  *See, e.g., Kelly v. Town of Abingdon, Virginia*, 90 F.4th 158, 169 (4th Cir. 2024).  In order to demonstrate she is disabled, a plaintiff must plead an actual physical or mental impairment, a record of impairment, or that she was regarded as having an impairment.

8

42 U.S.C. § 12102(1)(A)-(C). The District Court correctly found that Plaintiff did not adequately plead any of these alternatives.

First, the District Court found that Plaintiff had failed to plead an actual impairment, as the only allegation supporting such a claim was the following assertion:

> Plaintiff has received medical treatment for a disability that restricts her ability to communicate and specifically impairs her use of vocal speech.

(Dist. Ct. ECF No. 55-1 at 1 of 8.) Because Plaintiff did not allege a specific diagnosis or identify an actual medical impairment that limited her communication, the District Court correctly found that she had not plausibly alleged an actual impairment. (*See* Dist. Ct. ECF No. 81 at 12.)

In her Opening Brief, Plaintiff argues that she was not required to "disclose a diagnosis" to meet her burden. (ECF No. 8 at 1-2.) But Plaintiff misunderstands— the issue is not one of disclosure; rather, Plaintiff was required to plead sufficient facts to plausibly establish she suffered from an actual impairment. If she was unable to allege the "medical label" that described her alleged condition, she could have pled facts that described the actual physical condition itself. Plaintiff did not do so. Instead, she merely asserted in the most general terms that she

had a disability that affected "her ability to communicate." The District Court correctly held that this allegation was conclusory and insufficient to establish an actual impairment. *See, e.g., Fedynich v. Boulder Hous. Partners,* No. 3:20CV165, 2020 WL 5371352, at *10 (E.D. Va. Sept. 8, 2020), *aff'd*, No. 20-2082, 2023 WL 1814208 (4th Cir. Feb. 8, 2023); *Bakra v. RST Mktg.*, No. 6:19-CV-00033, 2019 WL 3459251, at *2 (W.D. Va. July 31, 2019); *Smith v. Virginia Dep't of Agric. & Consumer Servs.*, No. 3:12CV77, 2012 WL 2401749, at *9 (E.D. Va. June 25, 2012). Plaintiff's objections to that holding on appeal are without merit.

Next, the District Court correctly held that Plaintiff had failed to establish a record of disability. Referencing its Initial Dismissal Order, the District Court noted that Plaintiff had previously "failed to allege any facts identifying a physical or mental impairment . . . or provide any medical documentation of a physical or mental impairment" and had not corrected that failure in the Fourth Amended Complaint. (Dist. Ct. ECF No. 81 at 13.) In her Opening Brief, Plaintiff appears to argue that the District Court erred by requiring her to produce medical documentation "at the pre-discovery stage." (ECF No. 8 at 2-3.) Again, Plaintiff is mistaken. The District Court held that Plaintiff had not adequately

alleged a record of disability because (as described above) she did not plausibly allege a physical or mental impairment that would be present in any records. The District Court correctly held that conclusory allegations that some amorphous records exist, without alleging a specific impairment contained in those records, are insufficient.

Lastly, the District Court correctly held that Plaintiff failed to allege she was regarded as disabled because her allegations did not plausibly demonstrate that Revature viewed her as unable to work in the industry generally nor did it view her as substantially limited in her ability to do her job as a result of a medical impairment. (Dist. Ct. ECF No. 81 at 13-14 (citing *Akbar-Hussain v. ACCA, Inc.*, 2017 WL 176596, at *4 (E.D. Va. 2017)).) As best as can be discerned, Plaintiff argues in her Opening Brief that the District Court used the wrong formula for evaluating the "regarded as" prong. (*See* ECF No. 8 at 6-7.) However, Plaintiff does not cite any authority in support of her argument. Moreover, regardless of the exact formulation, the Fourth Amended Complaint simply does not plausibly demonstrate that Revature ever regarded Plaintiff as disabled. In fact, if anything, Plaintiff's own allegations suggest the opposite, that because Plaintiff failed to provide

medical certification, Revature operated under the belief that she *could* perform the job without any accommodation. (*See, e.g.*, Dist. Ct. ECF No. 55-3 at 25 of 31 (Revature attempting to place Plaintiff with client in Florida).)

Because Plaintiff failed to adequately plead any of the methods of demonstrating disability under the ADA, the District Court's decision to dismiss her non-retaliation claims should be affirmed.

**B.    The claims could have been dismissed for a host of additional reasons.**

Plaintiff's non-retaliation claims were also subject to dismissal for numerous reasons not specifically relied on by the District Court.  This Court is, "of course, entitled to affirm on any ground appearing in the record, including theories not relied upon or rejected by the district court." *Scott v. United States*, 328 F.3d 132, 137 (4th Cir. 2003).

First, fatal to all three claims, in addition to the disability issue addressed above, Plaintiff did not adequately plead that she was a "qualified individual" under the statute.  The Fourth Amended Complaint lists 10 separate essential functions of Plaintiff's former position, but the pleading fails to plausibly allege that she could actually

perform those functions with or without an accommodation. (*See* Dist. Ct. ECF No. 58 at 9-10.)

As to the discharge claim, Plaintiff failed to adequately plead she was meeting her employer's expectations at the time of her termination or that "the circumstances of h[er] discharge raise a reasonable inference of unlawful discrimination." *See, e.g., Kelly*, 90 F.4th at 169.

With regard to expectations, Plaintiff's own allegations establish that during the relevant time period: (i) she was on Revature's "Bench" and therefore not generating revenue (Dist. Ct. ECF No. 55-3 at 9); (ii) she received repeated communications from Revature that she was failing to adequately perform her Bench activities (*id.* at 14-17); and (iii) she refused to interview for a client placement because she felt the position was with a "temp agency with no determined contract length" (*id* at 25-26).

Similarly, the discharge claim also fails because the termination did not occur under circumstances giving rise to an inference of discrimination. This is clear given that: (i) Revature repeatedly attempted to engage in the interactive process, and was only prevented from continuing that process because Plaintiff failed to provide any

medical certification (*id.* at 13, 15-17, 20-21); (ii) Plaintiff was terminated only after being on the bench for three months without performing required activities, and then declined an interview with a client (*id.* at 14-17, 25-26); and (iii) five months passed between the request for an accommodation and the termination, negating any inference that the discrimination was in response to that request (*id.* at 13, 26).

Regarding the failure to accommodate claim, in addition to the other issues, that claim fails because Plaintiff did not put Revature on notice of any actual medical condition. In order to state a claim, Plaintiff was required to have: (i) identified her alleged impairment to Revature and (ii) responded to Revature's reasonable requests for information. *See, e.g., Jeffries v. Gaylord Ent.*, No. CIV. PJM 10-0691, 2013 WL 1316382, at *4 (D. Md. Mar. 27, 2013), *aff'd*, 538 F. App'x 313 (4th Cir. 2013).

It is the employee's burden to ensure their employer has sufficient understanding of the impairment to engage in the interactive process. *See id.* However, Plaintiff never alleged that she ever disclosed to Revature her actual physical or mental impairment from which she purportedly suffered. Furthermore, Plaintiff did not plead that she ever

provided Revature with the medical certification the company requested. Consequently, she did not state a claim for failure to accommodate.

As to the hostile work environment claim, Plaintiff failed to identify any "severe or pervasive" conduct.  *See, e.g., Pueschel v. Peters*, 577 F.3d 558, 565 (4th Cir. 2009).  As best as can be discerned, Plaintiff appeared to rest her claim on two incidents, both of which preceded her request for a reasonable accommodation:

> (i) On July 26, 2021, an (unnamed) Revature employee allegedly asked Plaintiff before an interview, "how do you expect to do an interview using text?" Plaintiff offered an explanation and then proceeded with the interview. (Dist. Ct. ECF No. 55-2 at 4 of 13.)

> (ii) On July 29, 2021, Plaintiff's manager allegedly asked, "how long are you gonna have this problem?" referring to Plaintiff's alleged issue with speaking. (*Id.*)

Neither of these queries from employees trying to understand the nature of Plaintiff's alleged condition constitutes the type of conduct that can support a harassment claim, as: (i) neither of these questions is objectively derogatory in nature; and (ii) even if they were, at most they constitute the type of sporadic incident that is not capable of demonstrating a hostile environment.  *See, e.g., Britt v. DeJoy*, No. 20-1620, 2022 WL 4280495, at *3 (4th Cir. Sept. 14, 2022).

15

In sum, each of these claims was properly dismissed by the District Court, and that holding should be affirmed.

## II. The District Court's Dismissal of the Retaliation Claims Should be Affirmed.

In the Initial Dismissal Order, the District Court held that Plaintiff had failed to exhaust her administrative remedies regarding the retaliation claim:

> Here, Plaintiff failed to exhaust her retaliation claim. In her EEOC Charge, <u>Plaintiff failed to select the box for retaliation. Additionally, in the narrative section of Plaintiff's EEOC charge, she described her claims specifically as "hostile environment and failure to provide a reasonable accommodation," but did not mention retaliation</u>. Dkt. 1-1 at 7. Thus, the Court finds Plaintiff's EEOC Charge did not put Defendant "on notice of" Plaintiff's ADA retaliation claim as it did not contain allegations describing retaliation. *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005). Thus, Plaintiff failed to exhaust her administrative remedies as to her ADA retaliation claim and lacks standing to bring a retaliation claim under the ADA.

(Dist. Ct. ECF No. 38 at 15-16 (emphasis added).) In addition to holding that she failed to exhaust the retaliation claims, the District Court also substantively analyzed the claims and determined that Plaintiff had failed to adequately plead facts to support a claim for retaliation. (*Id.* at 16-20.)

Despite that holding, Plaintiff reasserted the retaliation claims in the Fourth Amended Complaint. In the Final Dismissal Order, the District Court again dismissed the retaliation claims, stating:

> With respect to exhaustion, this Court previously dismissed Plaintiff's retaliation claim for failure to exhaust <u>because she failed to check the appropriate box and because the narrative did not put Defendant on notice</u> that she was pursuing a retaliation claim . . . The failure to exhaust is not a defect that can be remedied at this late date. Accordingly, Plaintiff's retaliation claim will be dismissed.

(Dist. Ct. ECF No. 81 at 15 (emphasis added).) In footnote 6 of the opinion, the District Court noted that although it declined to write out its substantive analysis of Plaintiff's retaliation claims again, it found "that Plaintiff has still failed to state a claim[.]"[1] (*Id.*)

## A. <u>The District Court was correct in holding that Plaintiff failed to exhaust her administrative remedies.</u>

In her Opening Brief, Plaintiff suggests that the District Court erred by dismissing her retaliation claims for the sole reason that she did not check the retaliation box on her EEOC Charge form. (*See* ECF No. 8 at 7-10.) However, as the quotations above indicate, Plaintiff's

---

[1] In her "Issue 9," Plaintiff takes issue with the District Court's lack of analysis in footnote 6. However, a District Court is not required to thoroughly explain an alternative holding that is not the primary basis of its ruling.

representation is not correct.  The District Court did not base its ruling solely on her failure to check a box.  Rather, the court found Plaintiff did not exhaust her remedies *both* because the retaliation box was not checked *and* because the charging narrative did not put Revature on notice that she was pursuing a retaliation claim.  The ruling was entirely consistent with the  established precedent of this Court.  *See, e.g., Miles v. Dell, Inc.*, 429 F.3d 480, 492 (4th Cir. 2005) (affirming dismissal for failure to exhaust when "Miles did not check the retaliation box on her charge form, and the narrative explaining her charge made no mention of retaliation."); *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 384 (4th Cir. 2022).

Consequently, the District Court's dismissal of the retaliation claims for failure to exhaust should be affirmed.

**B.    <u>Plaintiff failed to state a claim for retaliation.</u>**

In addition to the failure to exhaust issue, Plaintiff's retaliation claims were subject to dismissal because she did not adequately plead a claim for retaliation.

*1.    Alleged retaliation resulting in compensation deduction.*

In order to state a claim for retaliation under the ADA, a plaintiff must plead sufficient facts to plausibly show: "(1) that she has engaged

in conduct protected by the ADA; (2) that she suffered an adverse action subsequent to engaging in the protected conduct; and (3) that there was a causal link between the protected activity and the adverse action." *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002). To meet the first element, a plaintiff must allege sufficient facts to plausibly demonstrate "the predicate for a reasonable, good faith belief that the behavior she is opposing violates the ADA." *Id.*; *see also Thompson v. City of Charlotte*, 827 F. App'x 277, 279 (4th Cir. 2020).

In Count 3, Plaintiff alleged that she lost compensation as a result of an email she supposedly sent on September 23, 2021. (Dist. Ct. ECF No. 55-2 at 3 of 13.) However, for the reasons explained below, she did not adequately plead a protected activity or causation.

On August 31, 2021, Plaintiff was instructed that she "must begin full participation in all bench activities." (Dist. Ct. ECF No. 55-3 at 14 of 31.) On September 8, 2021, Plaintiff received another email from Revature instructing her to "please resume with participation in bench activities." (*Id.* at 16 of 31.) On September 17, 2021, Plaintiff received another email from Revature with the subject line: "bench guidelines," reiterating the company's expectation that Plaintiff would participate in

19

all required bench activities. (*Id*. at 16-17 of 31.) On September 23, 2021,

Plaintiff received a Performance Deficiency Notice from Revature which

stated:

> Good afternoon, Danielle. After your discussion with
> HR on 9/7/21, you were instructed to resume Bench
> activities in full. After over a week of continued
> nonparticipation, on 9/17/21 you were notified again by
> Antony of the expectations regarding Bench
> participation. At this time you still not have not
> participated in any of the required activities for your
> time on the Bench.
>
> This is formal notice that you are to begin Bench
> activities participation in full no later than tomorrow or
> escalation will be initiated.

(*Id*. at 17-18 of 31.)

Plaintiff claims that after receiving the above email she "wrote to

both management and HR explaining that she felt the performance

notice was simply to intimidate or harass her because of the disability."

(Dist. Ct. ECF No. 55-2 at 3 of 13.) But, such an email, even if written,

is not protected activity because there is no reasonable, good faith basis

for perceiving that the Performance Deficiency Notice violated the ADA.

From her own allegations, it is clear that the Deficiency Notice was only

provided after Plaintiff failed to perform the required bench activities,

and after she failed to heed repeated instructions to do so by her

20

employer. Because Plaintiff lacked a good faith reason to believe the Deficiency Notice was illegal under the ADA, rather than a typical warning document given for poor performance, her alleged September 23 email is not protected activity. *See Freilich,* 313 F.3d at 216-217 (rejecting retaliation claim because plaintiff "could not . . . reasonably believe that her disagreement with HMH over the expenditure of hospital resources constituted a violation of the ADA);

Furthermore, Plaintiff also failed to establish a causal connection. Plaintiff stated that on October 1, 2021, her compensation was reduced by 32 hours. (Dist. Ct. ECF No. 55-2 at 3 of 13.) In her Charge, Plaintiff provides more detail to this allegation, stating that on October 1, Revature rejected her timesheet, and she was "instructed to log zero hours for Friday 9/17, Monday 9/20, Tuesday 9/21, Wednesday 9/22." (Dist. Ct. ECF No. 55-3 at 21 of 31.) In other words, Plaintiff's compensation was not reduced; rather, Revature rejected her timesheet in which she claimed she worked 8 hours on each of those four days since she indisputably was not doing client work nor was she completing her Bench assignments.

21

In the Performance Deficiency Notice, the company made clear that it did not believe that Plaintiff had been engaging in Bench activities as she was instructed to do so on September 7. (*Id*. at 17-18 of 31.) The Notice emphasized that she was re-instructed to perform her work on September 17, but that she still had not done so as of September 23. (*Id*.) It is thus clear that, as of the time of the Notice, Revature could find no evidence that Plaintiff had performed any work from September 17 to 22. When the company rejected a timesheet claiming 32 hours of work, Revature was acting in a consistent fashion with the understanding expressed in the Performance Deficiency Notice.

Consequently, there is no reason to believe that the rejection of her timesheet was the result of Plaintiff's alleged communication on September 23. In fact, the allegations fail to establish who Plaintiff believes was responsible for the rejection of her timesheet, and whether that person was even aware of the alleged communication of September 23.

In sum, even if Plaintiff had exhausted her remedies, the retaliation claim in Count 3 was properly dismissed.

2.    *Alleged retaliation related to rejection of Plaintiff's portfolio.*

In Count 5, Plaintiff asserted a claim for retaliation based on her portfolio project being rejected. (Dist. Ct. ECF No. 55-2 at 5 of 13.) This claim fails for multiple substantive reasons. First, a "rejection" of work product is not an adverse action as it does not "adversely affect[] the terms, conditions, or benefits of the [P]laintiff's employment." *See, e.g., Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021). Second, Plaintiff's complaint failed to identify any alleged protected activity that was the "but for" cause of her portfolio rejection. *See Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 234 (4th Cir. 2016). Consequently, this claim was also properly dismissed.

## III. The District Court's Dismissal of the Interference Claims Should be Affirmed.

In the Final Dismissal Order, the District Court dismissed Plaintiff's interference claims for two alternative reasons— (i) because she did not exhaust her administrative remedies and (ii) because she failed to plead sufficient facts to state a claim. (Dist. Ct. ECF No. 81 at 15-18.) Both holdings are correct, and the dismissal of these claims should be affirmed.

### A. Plaintiff did not exhaust her remedies with regard to the interference claims.

As the District Court correctly noted in its Final Dismissal Order, Plaintiff did not identify or mention any interference claims in her Charge narrative. (Dist. Ct. ECF No. 81 at 16; No. 55-3 at 6-28.) Consequently, she did not exhaust her administrative remedies and these claims were properly dismissed. This Court can and should affirm the dismissal of these claims on this basis alone.

### B. Plaintiff failed to state a claim for interference.

Aside from her failure to exhaust, the District Court also correctly held that Plaintiff did not state a claim for interference. In order to state such a claim, a plaintiff must plausibly allege: (1) she engaged in statutorily protected activity; (2) she was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) defendants coerced, threatened, intimidated, or interfered on account of her protected activity; and (4) defendants were motivated by an intent to discriminate. *Kelly v. Town of Abingdon, Virginia*, 90 F.4th 158, 171 (4th Cir. 2024) (citing *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545 (7th Cir. 2017) and *Brown v. City of Tucson*, 336 F.3d 1181 (9th Cir. 2003)). In addition to those elements, a plaintiff must also "demonstrate

that she has suffered a distinct and palpable injury" as a result of the interference. *Brown*, 336 F.3d at 1193 (9th Cir. 2003).

1. *Alleged interference related to the portfolio.*

Plaintiff alleged an interference claim based on the fact that her portfolio was rejected because she did not include the name of a prior client she had previously worked for in her submission. (Dist. Ct. ECF No. 55-3 at 11 of 31.)  The District Court correctly held that "the temporary rejection of Plaintiff's work product is not a significant enough event to constitute interference because Plaintiff was ultimately allowed to resubmit her work." (Dist. Ct. ECF No. 81 at 16.)

Additionally, the claim was also subject to dismissal because Plaintiff did not adequately plead an intent to discriminate on Revature's behalf when rejecting the portfolio.  In order to do so, Plaintiff was required to allege facts that plausibly showed Revature "engaged in this behavior in order to prevent h[er] from filing EEOC charges, requesting further accommodations, or pursuing another protected action under the ADA." *Kelly*, 90 F.4th at 171.  There is nothing in the Fourth  Amended Complaint that suggests a plausible basis for finding the temporary rejection of her portfolio was designed to stop her from engaging in future

protected activity. Moreover, Plaintiff also failed to allege she suffered any "distinct and palpable injury" because of the rejection of her portfolio.

Consequently, the District Court was undoubtedly correct in its dismissal of this interference claim.

2. *Alleged interference with request for accommodation.*

As best as can be discerned, Plaintiff's claim in Count 6 was that her payment of her wages was delayed by Revature, which represented interference with her request for an accommodation. However, as the District Court correctly noted in the Final Dismissal Order, Plaintiff's own allegations make clear that she did not state a claim for interference. (Dist. Ct. ECF No. 17-18.)

As noted by the District Court, Plaintiff's allegations suggest that the reason for any delay in her wage payments was that she did not timely submit her timesheets because she (mistakenly) believed she was not permitted to submit timesheets based on her misinterpretation of a memorandum she received *before* she ever requested an accommodation. (*Id.*) The District Court correctly reasoned that: (i) given that the memorandum was provided to Plaintiff before the accommodation request, the memorandum itself could not be a basis for interference; and

(ii) given that Plaintiff affirmatively alleged she did not timely submit her timesheet, there was no basis for inferring Revature interfered with Plaintiff's rights or was motivated by any discriminatory intent. (*Id.*)

In her Opening Brief, Plaintiff suggests that the District Court "totally misrepresented [the Fourth Amended Complaint]. I didn't say the bench memo was the act of interference." (ECF No. 8 at 11.) Plaintiff, however, misunderstands the District Court's holding. Again, that holding was there was no plausible inference of interference by Revature given that Plaintiff did not timely submit her timesheets. Further, the fact that Plaintiff claims her failure to timely submit was because of her reliance on the memorandum also does not provide an inference of interference given that she concedes it was written and delivered before she submitted any accommodation request. That holding is correct and Plaintiff's appeal of this point is without merit.

3.    *Alleged interference based on Revature's policies.*

In Count 7, Plaintiff asserted another interference claim based on the alleged "failure to respond to Plaintiff's repeated complaints about Plaintiff's supervisor Antony, as Interference by not enforcing company policies about discrimination." (Dist. Ct. ECF No. 55-2 at 7 of 13.) From

the Fourth Amended Complaint, it was unclear what internal complaints Plaintiff was referencing for the purposes of this claim or what she allegedly stated about Antony in these complaints.  Further, while Plaintiff seemed to argue that Revature did not comply with its own company policies, Plaintiff failed to identify what specific company policy was at issue, or how Revature allegedly failed to comply.

Given this utter lack of allegations, Plaintiff clearly did not state a plausible claim for interference, and the District Court properly dismissed this claim.[2]

## CONCLUSION

For the reasons stated above, the District Court's decision to dismiss each of Plaintiff's claims was correct and should be affirmed.

Dated: April 24, 2025                    Respectfully submitted,

                                          /s/ Micah E. Ticatch
                                         Edward Lee Isler

---

[2] In her Opening Brief, Plaintiff complains that the District Court misinterpreted her claim as referring to the same policy that had been the basis of an interference claim addressed in the Initial Dismissal Order.  (See ECF No. 8 at 12.)  However, to the extent Plaintiff was referring to a completely different company policy than previously litigated, the District Court's confusion was understandable given that Plaintiff did not plead any details as to what policy she was referring to in Count 7.

Micah E. Ticatch
ISLER DARE, P.C.
1945 Old Gallows Road. Suite 650
Vienna, Virginia 22182
Phone: (703) 748-2690
Facsimile: (703) 748-2695
eisler@islerdare.com
mticatch@islerdare.com
*Counsel for Appellee*
*Revature LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of April 2025, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will serve the foregoing upon:

> Danielle Taylor
> 3622 Old Silver Hill Road, #908
> Suitland, MD 20746
> t842202@gmail.com
> *Pro se Plaintiff*

>     /s/ Micah E. Ticatch
> Micah E. Ticatch
> ISLER DARE, P.C.
> 1945 Old Gallows Road, Suite 650
> Vienna, Virginia 22182
> (703) 748-2690
> (703) 748-2695 (fax)
> mticatch@islerdare.com

> *Counsel for Appellee*
> *Revature LLC*